# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TRACEY D. CIMORELLI,** individually and d/b/a **TRACEY CIMORELLIA'S DAY CARE,** | : CIVIL ACTION NO. 4:16-CV-710 |
| Plaintiff | : (Chief Judge Conner) |
| v. | : |
| **TIOGA COUNTY, PENNSYLVANIA AND TIOGA COUNTY DEPARTMENT OF HUMAN SERVICES,** | : |
| Defendants | : |

## MEMORANDUM

Plaintiff Tracey D. Cimorelli ("Cimorelli"), individually and doing business as Tracey Cimorelli's Day Care, brings this action against defendants Tioga County, Pennsylvania, and Tioga County Department of Human Services (collectively, "Tioga County") pursuant to 42 U.S.C. § 1983. (Doc. 16). Cimorelli alleges that Tioga County violated her Fourteenth Amendment right to substantive due process by wrongfully filing a child abuse report against her, causing revocation of her child care license. (See id.) Before the court is Tioga County's motion (Doc. 30) for summary judgment. The court will grant Tioga County's motion.

I.   **Factual Background & Procedural History**[1]

Cimorelli, a licensed child care provider, owned and operated a day care facility in Wellsboro, Pennsylvania until 2016.  (See Doc. 30-1, Cimorelli Dep., 5:9-12, 6:9-18, 49:2-50:6, Apr. 6, 2017 ("Cimorelli Dep."); Doc. 31 ¶ 1; Doc. 37 ¶ 1).  Todd Adams ("Adams") worked as Cimorelli's full-time assistant at the day care.  (See Cimorelli Dep. 7:11-8:7, 8:20-23).  Cimorelli hired additional part-time employees as needed when enrollment at the day care exceeded eight or nine children.  (See id. at 7:25-8:23).

M.Y. attended Cimorelli's day care facility from September 2014 until December 2014 when she was eight months old.[2]  (See Cimorelli Dep. 9:16-19; Doc. 31 ¶¶ 1-2; Doc. 37 ¶¶ 1-2).  On December 5, 2014, M.Y.'s father picked her up from day care.  (Doc. 31 ¶ 5; Doc. 37 ¶ 5).  That evening, M.Y. showed signs of persistent discomfort.  (See Doc. 31 ¶¶ 7-9; Doc. 37 ¶¶ 7-9).  The next day, M.Y.'s parents took her to Soldiers and Sailors Memorial Hospital, where x-rays were ordered and revealed a bruised hip.  (Doc. 31 ¶¶ 10-11; Doc. 37 ¶¶ 10-11).  On December 9, 2014,

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  LOCAL RULE OF COURT 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues for trial.  See id.  Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts.  (See Docs. 31, 37).  To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

[2] The court refers to M.Y. by her initials due to her status as a minor.  See LOCAL RULE OF COURT 5.2(d)(2).

2

M.Y.'s parents brought her to see a pediatrician. (Doc. 31 ¶ 12; Doc. 37 ¶ 12; see also Doc. 30-4). The pediatrician ordered additional x-rays and diagnosed M.Y. as having "bilateral fractures of the tibia and fibula." (Doc. 31 ¶ 13; Doc. 37 ¶ 13). M.Y.'s parents took her to Geisinger Medical Center ("Geisinger"), where a doctor confirmed the pediatrician's diagnosis. (Doc. 31 ¶ 14; Doc. 37 ¶ 14).

On December 11, 2014, Geisinger reported suspected child abuse to Child Line based on M.Y.'s injuries. (See Doc. 31 ¶ 15; Doc. 37 ¶ 15). Tioga County case workers commenced their investigation that same day. (Doc. 31 ¶ 16; Doc. 37 ¶ 16). Over the course of three months, case workers interviewed a number of individuals regarding M.Y.'s injuries, to wit: M.Y.'s parents, maternal grandparents, and maternal aunt; staff and physicians at Soldiers and Sailors Memorial Hospital and at Geisinger; M.Y.'s pediatrician; Cimorelli, Adams, and other day care employees; and parents of other children who attended Cimorelli's day care. (See Doc. 30-2 at 61; Doc. 31 ¶¶ 18, 20-22, 24, 27-31; Doc. 37 ¶¶ 18, 20-22, 24, 27-31). The case workers interviewed M.Y.'s parents on multiple occasions and conducted two separate home visits. (Doc. 31 ¶¶ 16, 21-22; Doc. 37 ¶¶ 16, 21-22). Their notes indicate a "warm and loving" relationship between M.Y. and her parents. (Doc. 31 ¶ 23; Doc. 37 ¶ 23). They also interviewed Cimorelli several times and visited the day care facility twice. (Doc. 31 ¶¶ 20, 24, 31; Doc. 37 ¶¶ 20, 24, 31). The case workers considered alternative theories as to the cause of M.Y.'s injuries, including contact with another child at day care and contact with M.Y.'s family dog. (See Doc. 31 ¶¶ 20, 25; Doc. 37 ¶¶ 20, 25).

The case workers met on February 5, 2015 to review evidence obtained throughout the investigation. (Doc. 31 ¶ 32; Doc. 37 ¶ 32). The next day, Tioga County issued its findings of child abuse and indicated Cimorelli and Adams as the cause of M.Y.'s injuries. (See Doc. 31 ¶ 33; Doc. 37 ¶ 33; see also Doc. 30-2 at 76). As a result, Cimorelli lost her child care license and closed her day care facility. (See Cimorelli Dep. 45:19-47:12, 49:2-4). Cimorelli and Adams successfully appealed Tioga County's finding. (Doc. 31 ¶¶ 34-36; Doc. 37 ¶¶ 34-36). Cimorelli reopened her day care facility shortly thereafter. (See Cimorelli Dep. 47:8-16).

Cimorelli commenced the instant action on April 28, 2016, (Doc. 1), subsequently filing an amended complaint (Doc. 16) on June 22, 2016. Therein, Cimorelli asserts one substantive due process claim under 42 U.S.C. § 1983. (Doc. 16 ¶¶ 44-70). Cimorelli contends that case workers, pursuant to an "unofficial custom," failed to thoroughly investigate the cause of M.Y.'s injuries and targeted Cimorelli instead. (See, e.g., Doc. 35 at 4-5, 11-13, 15; Doc. 37 ¶¶ 16-17, 21, 25, 29). Tioga County filed a motion (Doc. 17) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). We denied Tioga County's motion, finding that Cimorelli failed to articulate an official policy that caused her alleged injury but permitting her to proceed on an unofficial custom theory of liability. (Doc. 23; see also Doc. 24). Following a period of discovery, Tioga County filed the instant motion (Doc. 30) for

summary judgment, together with supporting papers.³ The motion is fully briefed and ripe for disposition.

## II. Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

Federal Rule of Civil Procedure 56(c) requires movants and nonmovants alike to support factual assertions by "citing to particular parts of materials in the record" or otherwise "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c). Rule 56(e) allows the court to deem undisputed any fact not properly countered by record evidence. See FED.

---

³ In addition to providing responses to each of Tioga County's statements of fact, (see Doc. 37), Cimorelli filed a separate "Counterstatement of Undisputed Material Facts." (Doc. 36). Neither Federal Rule of Civil Procedure 56 nor Local Rule 56.1 authorizes this filing, and Cimorelli did not request leave of court therefor. Accordingly, the court will not consider this filing as it fails to conform to our procedural rules.

R. CIV. P. 56(e)(2). The Local Rules of Court undergird these principles by requiring Rule 56 motions to "be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. The Local Rule also requires the party opposing summary judgment to file a responsive statement identifying genuine issues to be tried and mandates that both parties' submissions "include reference to the parts of the record that support the statements." Id. Consistent with Federal Rule 56, the Local Rule allows a court to deem a moving party's statement to be admitted when it is not properly "controverted by the statement required to be served by the opposing party." Id.; see Thomas v. United States, 558 F. Supp. 2d 553, 558-59 (M.D. Pa. 2008). In resolving the instant motion, the court has reviewed the parties' statements and has independently considered the entire record.

### III. Discussion

As stated *supra*, we have already determined that Cimorelli failed to allege the existence of an official policy at the Rule 12 stage. (Doc. 23 at 7). Hence, the sole issue before the court is whether Tioga County is entitled to summary judgment on Cimorelli's unofficial custom theory.[4]

Section 1983 of Title 42 of the United States Code provides a cause of action to redress violations of federal law committed by state officials. See 42 U.S.C. §

---

[4] Tioga County also moves for summary judgment on Cimorelli's claim for punitive damages because "a municipality is immune from punitive damages under Section 1983." (Doc. 30 ¶¶ 58-59; see also Doc. 32 at 14-15). Cimorelli concedes that punitive damages "are not available . . . in this case." (Doc. 35 at 15).

1983. Section 1983 is not a source of substantive rights, but merely a method for vindicating those rights otherwise protected by federal law. Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a claim under Section 1983, plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)). Under Pennsylvania law, Cimorelli had a legitimate property interest in her child care license. See City of Phila., Bd. of License & Inspection Review v. 2600 Lewis, Inc., 661 A.2d 20, 22 (Pa. Commw. Ct. 1995) (citing Young J. Lee, Inc. v. Dep't of Revenue, Bureau of State Lotteries, 474 A.2d 266, 270 (Pa. 1983)); see also Lindsay v. City of Phila., 844 F. Supp. 229, 234 (E.D. Pa. 1994). Tioga County does not dispute that it acted under color of state law at all times relevant herein.

Municipalities and other local government entities may not be held liable in a Section 1983 suit for conduct of their employees under a theory of *respondeat superior* or vicarious liability. Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403 (1997) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978)); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991). Municipal liability arises only when a government causes an employee to violate another's constitutional rights by an official custom or policy. See Monell, 436 U.S. at 690-94; see also Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998). To establish liability under Monell, a plaintiff must identify the challenged policy or custom, attribute it to the public entity itself, and show a causal link between the execution

of the policy or custom and the injury suffered.  See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).

A policy exists when a decisionmaker possessing final authority to establish public policy with respect to the disputed action issues an official proclamation, policy, or edict.  Id. at 584 (quoting Kneipp, 95 F.3d at 1212).  By contrast, a custom is an act that is not formally approved but is nonetheless "so widespread as to have the force of law."  Id. (quoting Bryan Cty., 520 U.S. at 404).  A plaintiff proceeding on an unofficial custom theory must adduce evidence tending to establish that "the [municipality] knew of a pattern of constitutional violations or that such consequences were so obvious the [municipality's] conduct can only be described as deliberate indifference."  Pelzer v. City of Phila., 656 F. Supp. 2d 517, 533 (E.D. Pa. 2009).

Tioga County contends that Cimorelli has failed to produce any evidence that it has an "unofficial custom . . . of arbitrarily issuing reports of Indicated Child Abuse" or that it acted with "deliberate indifference to the [constitutional] rights of others."  (Doc. 32 at 8).  We agree.  Cimorelli presents no affirmative evidence of the existence of a custom.  (See Doc. 35 at 10-13).  For example, she fails to proffer evidence of a single instance, other than events related to the matter *sub judice*,[5] to support her claim that Tioga County has a custom of arbitrarily issuing reports of

---

[5] Cimorelli argues that case workers should have interviewed M.Y.'s paternal grandparents and more carefully investigated M.Y.'s maternal aunt.  (See Doc. 35 at 5).  She speculates that case workers did not investigate M.Y.'s paternal grandparents because M.Y.'s paternal grandfather is the sheriff of Tioga County.  (See id. at 5, 7, 15).

8

child abuse. (See id. at 12-13). Instead, Cimorelli offers only conclusory statements that a custom exists. (See, e.g., id. at 10, 13). Rule 56 demands *probata* to support a plaintiff's *allegata*, see Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 252 (3d Cir. 2010); Pobodnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp., 477 U.S. at 325), but Cimorelli supplies us none.

Cimorelli also fails to establish that Tioga County issued its report with deliberate indifference to her constitutional rights. (Doc. 35 at 14-15). *Per contra*, the undisputed record evidence shows that Tioga County case workers interviewed numerous individuals and considered alternative theories before issuing the final report. (See Doc. 37 ¶¶ 16, 18, 20-25, 27-33; see also Doc. 30-2 at 61; Doc. 31 ¶¶ 16, 18, 20-25, 27-33). Surveying the record in the light most favorable to Cimorelli, the court concludes that Cimorelli has not presented a genuine issue of material fact remaining for trial and that Tioga County is entitled to summary judgment on Cimorelli's Monell claim.[6]

---

[6] To the extent Cimorelli attempts to intimate a single incident claim, (see Doc. 35 at 12-13), the court declines to do so. Preliminarily, the claim is not raised in the amended complaint, and a party cannot amend their pleading through briefing on dispositive motions. See Canty v. Ebbert, No. 1:15-CV-0064, 2016 WL 2961263, at *2 (M.D. Pa. May 23, 2016) (citing Commonwealth *ex rel.* Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988)). Further, the court notes that evidence of a solitary incident of unconstitutional activity is insufficient to establish liability under Monell unless there is proof that the incident "was caused by an existing, unconstitutional municipal policy." Pelzer, 656 F. Supp. 2d at 531, n.24 (quoting City of Okla. City v. Tuttle, 471 U.S. 808, 823-24 (1985)). Cimorelli has failed to produce evidence sufficient to meet this high threshold.

9

**IV. Conclusion**

The court will grant Tioga County's motion (Doc. 30) for summary judgment. An appropriate order shall issue.

        /S/ CHRISTOPHER C. CONNER
        Christopher C. Conner, Chief Judge
        United States District Court
        Middle District of Pennsylvania

Dated: May 1, 2018